UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Criminal No.:** |
| v. | : | |
| | : | **VIOLATIONS:** |
| | : | |
| | : | **18 U.S.C. § 1505 (Obstruction of Justice);** |
| **ROBERT S. PARSLEY,** | : | **18 U.S.C. § 2 (Aiding and Abetting)** |
| | : | |
| Defendant. | : | **UNDERSEAL** |

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**

Introduction

At times material to this Information:

1.  Marc Duchesne was a citizen of the United Kingdom and resided in Houston, Texas.

2.  Nationwide Capital Corporation ("Nationwide") was a Nevada corporation with offices in Houston, Texas which had de minimus assets and revenues and virtually no business operations. In July 2002, Nationwide merged with Calwest Ventures Inc. ("Calwest"), a publicly traded "shell" company which also had no significant assets, income or business. The merger of Nationwide and Calwest occurred after Duchesne and others had purchased virtually all of the outstanding shares of Calwest. At the conclusion of the merger, the surviving entity was Nationwide Capital Corporation.

3.  After the merger, Nationwide became a publicly traded company under the symbol "NCCN." Nationwide had common stock registered with the United States Securities and Exchange Commission ("SEC") under the Securities Act of 1933, and from on or about August 16, 2002,

through on or about October 1, 2002, the common stock of Nationwide traded on the electronic bulletin board system (the "OTC Bulletin Board") maintained by the National Association of Securities Dealers (the "NASD"). Nationwide was required by law to file with the SEC truthful statements regarding its business affairs, including periodic reports on its financial condition and operations. On October 1, 2002, the SEC suspended trading in Nationwide securities until October 15, 2002, citing questions about statements made by Nationwide concerning its business operations, business relationships, financial condition and its acquisition of another company.

      4.     G.M. was a resident of Houston, Texas and was the President and Chief Executive Officer of Nationwide.

      5.     J.M., a resident of Houston, Texas, was the President of the "Financial Services Division" of Nationwide.

      6.     ROBERT PARSLEY, a resident of Houston, Texas, was a commercial real estate broker. In or about June 2002, PARSLEY began to assist J.M., Duchesne and others associated with Nationwide with finding commercial office space for Nationwide.

      7.     The SEC was an agency of the United States located at 450 5th Street, N.W., Washington, D.C. and was responsible for protecting investors and maintaining the integrity of the securities markets. As such, the SEC had regulatory and civil enforcement authority over companies such as Nationwide, whose securities were traded on the OTC Bulletin Board, as well as the officers, directors, and employees of such companies, such as G.M. and J.M.

### Creation of Nationwide and Commencement of Trading

8. On or about July 23, 2002, Duchesne, G.M. and others purchased the outstanding common stock of Calwest.

9. On or about August 6, 2002, Duchesne, G.M. and others changed Calwest's name to Nationwide.

10. On or about August 16, 2002, Duchesne, G.M. and others caused Nationwide common stock to became publicly traded on the OTC Bulletin Board under the ticker symbol "NCCN."

### Prearranged Trades

11. On or about August 29, 2002, Duchesne, with the intent to manipulate the price of Nationwide stock, instructed ROBERT PARSLEY over the telephone to purchase Nationwide common stock in amounts and at prices dictated by Duchesne

12. On or about August 29, 2002, defendant PARSLEY, for the purpose of unlawfully manipulating the price of Nationwide stock, telephoned his broker and caused him to buy a total of 800 shares of Nationwide common stock at prices ranging between $10.25 and $18.75 per share well knowing that said prices in no way reflected the actual value of Nationwide stock.

### The SEC Investigation

13. The SEC is responsible for enforcing the federal securities laws, including the Securities Exchange Act of 1934, 15 U.S.C. § 78, *et seq.*

14. Beginning in or about 2002, the SEC commenced a proceeding and directed its staff to investigate whether Nationwide and others, directly or indirectly, in connection with the offer, purchase or sale of securities: (i) may have employed, or was employing, devices, schemes, or

artifices to defraud; (ii) may have made, or was making, untrue statements of material facts; or may have omitted, or was omitting, to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and may have obtained, or was obtaining, money or property by means of such statements or omissions; or (iii) may have engaged in, or was engaging in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers or other persons through, among other things, company press releases, statements on the Internet web site, and other public statements concerning, among other things: (a) the company's business operations, (b) the company's business relationships, (c) the company's current financial condition, (d) the company's acquisition of YCO, a privately held company, and (e) trading in the company's common stock by related shareholders.

15.     As its investigation progressed, it was material to the SEC to determine, among other things, whether Duchesne, defendant PARSLEY and others had attempted to artificially increase the price of Nationwide common stock by prearranging trades of Nationwide stock by and between Duchesne, defendant PARSLEY and others.

16.     On or about November 20, 2002, in the District of Columbia and elsewhere, the defendant, ROBERT PARSLEY, did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of the Securities Exchange Act of 1934, 15 U.S.C. § 78, *et seq.*, and other statutes, rules, and regulations, under which a pending proceeding, *i.e.*, *In re Nationwide Capital Corp.* (File No. HO-9553), was being had before the SEC, an agency of the United States, by making false and misleading statements to the SEC during an

investigative interview that the SEC conducted of PARSLEY by telephone from the District of Columbia, to wit, by denying that anyone, including Duchesne, ever told him or suggested to him at what price he should buy Nationwide common stock.

**(Obstruction of Justice and Aiding and Abetting, Causing an Act to be Done, in violation of Title18, United States Code, Sections 1505 and 2).**

        KENNETH L. WAINSTEIN
        United States Attorney
        for the District of Columbia

By: _____
        DAVID CAREY WOLL, JR.
        Assistant U.S. Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 514-4250